# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
IN RE AMENDED SUBPOENA TO TESTIFY    )
AT A DEPOSITION IN A CIVIL ACTION    )
DIRECTED TO LENOVO (UNITED STATES)   )    No. 1:24MC9
INC. IN CONNECTION WITH SOFTEX LLC   )
v. ABSOLUTE SOFTWARE CORPORATION,    )
NO. 1:22CV1308 (W.D. TEX)            )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Lenovo (United States) Inc.'s Motion to Quash Subpoena (Docket Entry 1; see also Docket Entry 2 (Brief in Support); Docket Entry 3 (Declaration in Support)). (See Docket Entry dated June 18, 2024 (referring instant Motion to undersigned Magistrate Judge).) According to the instant Motion, "[p]ursuant to [Federal] Rule [of Civil Procedure] 45(d), Lenovo (United States) Inc. ('Lenovo United States') moves [this Court] to quash a non-party deposition subpoena from Softex, LLC ('Softex') issued in Softex's dispute with Absolute Software Corp. and Absolute Software, Inc. (collectively, 'Absolute') pending in the Western District of Texas, Case No. 1:22-cv-01308-DAE." (Docket Entry 1 at 1 (referring to Docket Entry 3-1 at 2-13).)[1] The deposition subpoena at issue required Lenovo United States to appear at "2309 W. Cone Blvd., Suite 205, Greensboro, NC 27408 or at another location agreed upon or remote via Zoom."

---

1 Pin cites to Docket Entry 3-1 (which contains, inter alia, the subpoena at issue) refer to the page numbers that appear in the footer appended to that document upon its docketing in the CM/ECF system, not to any original pagination within that document.

(Docket Entry 3-1 at 2 (asterisk omitted).)[2] Because the deposition subpoena at issue "subjects [the deponent for Lenovo United States] to undue burden," Fed. R. Civ. 45(d)(3)(A)(iv), the Court will grant the instant Motion.[3]

INTRODUCTION

As explained by a neighboring court in a related case, "Lenovo [United States] sells computers. Absolute [] is a software developer that makes and sells [certain] security software."

---

[2] Greensboro lies within the Middle District of North Carolina. See 28 U.S.C. § 113(b).

[3] A magistrate judge may "hear and determine any pretrial matter pending before the [C]ourt, except [for eight specified motions]," 28 U.S.C. § 636(b)(1)(A), as to which (absent consent of the parties) a magistrate judge must make "recommendations for the disposition, by a [district] judge," 28 U.S.C. § 636(b)(1)(B); see also Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision."); Fed. R. Civ. P. 72(b)(1) (providing that, "magistrate judge[s] must enter a recommended disposition" in cases "when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense"). "[A] routine pretrial discovery motion, such as [a] motion to quash . . ., is not included in this list of [excepted/]dispositive motions." Jordan v. Commissioner, Miss. Dep't of Corr., 947 F.3d 1322, 1327 (11th Cir. 2020). The instant Motion "required separate litigation . . . in th[is District] only because the place for compliance with the subpoena – and thus the proper venue for filing a motion to quash – happened to be in th[is District], not in [the Western District of Texas]." Id. at 1328. "But that does not somehow transform into a dispositive ruling a routine pretrial discovery motion that is ancillary to the underlying [] litigation pending in the [Western] District of [Texas]." Id.; accord, e.g., Romero v. Smith Mgmt. & Consulting, LLC, No. 19MC91493, 2020 WL 1046625, at *4 (D. Mass. Mar. 4, 2020) (unpublished). As a result, the undersigned Magistrate Judge will issue an order (not a recommendation) as to the instant Motion.

2

Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd., No. 5:23CV90, 2023 WL 5814417, at *1 (E.D.N.C. Aug. 30, 2023) (unpublished). Likewise, "Softex provides security software solutions internationally to both individuals and businesses." Id.

"Softex is engaged in [patent infringement] litigation with numerous other companies, including [Lenovo United States,] Dell and HP, regarding Softex's technology, but most notably it is directly suing Absolute []." Id. at *2 (citing, inter alia, Softex LLC v. Absolute Software, Inc., No. 1:22CV1308 (W.D. Tex.)); see also id. at *1 ("Lenovo [United States] does not make the software accused of infringement [by Softex].").) "[B]y agreement of all parties, th[e] action [Softex brought against Lenovo United States] was transferred from the Western District of Texas to the Eastern District of North Carolina." Id. at *1 (internal citations omitted). Following that transfer, "Lenovo [United States] filed a motion to stay [that action] under the customer-suit exception." Id. (internal citation omitted).[4] Over Softex's opposition, see id., "the [c]ourt grant[ed that] motion to stay," id.; see also id. at *3 ("[B]ecause [Softex's] pending litigation [against Absolute]

---

4 As Softex has acknowledged, "[t]he stipulation[ for transfer of its suit against Lenovo United States from the Western District of Texas to the Eastern District of North Carolina] provided . . . [that] 'Lenovo U[nited] S[tates] reserv[ed] all rights with respect to any stay that may be granted in the future.'" (Docket Entry 12 at 4 (parentheses omitted) (quoting Stipulation of Transfer, Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd., No. 5:23CV90, Docket Entry 24, at 2 (E.D.N.C. Feb. 17, 2023)).)

3

in the Western District of Texas may resolve many of the underlying questions of this litigation [between Softex and Lenovo United States] and because there is a lack of undue prejudice to Softex, the [pertinent] factors conclusively weigh in favor of a stay.").

Subsequently, as part of its litigation against Absolute, Softex began seeking document production and deposition testimony from Lenovo United States via subpoena. (See Docket Entries 3-2, 3-3, 3-4.) Lenovo United States objected, including by "refus[ing] to provide any witnesses to testify on the deposition topics [Softex identified]." (Docket Entry 12-1 at 7.)[5] In the midst of discussions among counsel, Softex served the deposition subpoena at issue on April 25, 2024. (See id. at 3-5.) Counsel for Softex and Lenovo United States then held a meet-and-confer on April 29, 2024, but did not reach a resolution regarding deposition testimony. (See Docket Entry 1 at 3; see also Docket Entry 12-1 at 2 (documenting Softex's counsel's "follow[] up on the meet and confer call of 4/29/24," including "broad summary" of "discuss[ion of] three general areas of inquiry for document search and production," as well as inquiry about "status of the Lenovo [United States's] document search and production," but no mention of any (even possible) basis for agreement on deposition (emphasis added)).)

---

[5] Pin cites to Docket Entry 12-1 (which contains e-mail communications between counsel for Softex and Lenovo United States) refer to the page numbers that appear in the footer appended to that document upon its docketing in the CM/ECF system, not to any original pagination within that document.

4

Lenovo United States thereafter filed the instant Motion asking the Court to quash the deposition subpoena at issue. (See Docket Entry 1.) Softex responded in opposition (see Docket Entry 12) and Lenovo United States replied (see Docket Entry 14).

## DISCUSSION

"All civil discovery, whether sought from parties or nonparties, is limited in scope by [Federal] Rule [of Civil Procedure] 26(b)(1)," Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019), which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "When discovery is sought from nonparties, however, its scope must be limited even more." Jordan, 921 F.3d at 189. Specifically, "[a] more demanding variant of [Federal Rule of Civil Procedure 26's] proportionality analysis [] applies when determining whether, under [Federal] Rule [of Civil Procedure] 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." Id. (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)); see also id. at 193 ("The same undue-burden standard applies to both document and testimonial subpoenas." (internal quotation marks omitted)); Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iv) subjects a person to undue burden.").

5

For purposes of proportionality analysis under Federal Rule of Civil Procedure 45, "[a]s under [Federal] Rule [of Civil Procedure] 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient [of the discovery request]." <u>Jordan</u>, 921 F.3d at 189. "But courts must give the recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." <u>Id.</u> (internal quotation marks omitted).

In conducting that inquiry, among other things, "courts should consider not just the relevance of information sought, but the requesting party's need for it." <u>Id.</u> More precisely, to satisfy the heightened proportionality standard applicable to nonparty discovery, "[t]he information sought must <u>likely</u> (not just theoretically) have marginal benefit in litigating <u>important</u> issues," <u>id.</u> (emphasis added), i.e., it "must offer some value over and above what the requesting party already has," <u>id.</u>, or otherwise can get, <u>see</u> <u>id.</u> ("Courts should also consider what information is available to the requesting party from other sources."). "To that end, the requesting party should be able to explain why it cannot obtain the same, or comparable information that would also satisfy its needs, from one of the parties to the litigation . . . ." <u>Id.</u>; <u>see also</u> <u>id.</u> at 189 n.2 (explaining that, although nonparty moving to quash subpoena bears "burdens of proof and persuasion," nonparty can more easily meet its burden "if the requesting party cannot

6

articulate its need for the information and address obvious alternative sources"). Coordinately, courts must recognize that a "burden arises when a subpoena is overbroad – that is, when it seeks information beyond what the requesting party reasonably requires." Id. at 190; see also id. ("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."); Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty . . . .").

Here (as noted in the brief supporting the instant Motion), the "[d]eposition [s]ubpoena [at issue] asks Lenovo United States to designate and prepare one or more witnesses to testify on 14 broad deposition topics including contracts, technology, finances, marketing and sales." (Docket Entry 2 at 3 (citing Docket Entry 3-1 at 2-13).) Indeed, Softex's description of the 14 deposition topics alone spans three and a half pages. (See Docket Entry 3-1 at 10-13.) As "examples of overbroad deposition topics" (Docket Entry 2 at 4), Lenovo United States has pointed, in particular, to deposition topics 3, 8, and 9 (see id. at 4-5), the first of "which seeks information about every customer or end user[] of Lenovo [United States] devices unbounded by time" (id. at 4), the second

7

of "which seeks a witness prepared to testify about any alleged benefits of the accused Absolute software, not limited to any Lenovo products" (id.), and the third of "which demands a witness about how every customer of Lenovo United States might use the accused Absolute software" (id.). Softex did not contest those characterizations of the vast scope of those three deposition topics or otherwise explain its need to obtain such wide-sweeping testimony from Lenovo United States, particularly "when discovery is still on-going with Absolute" (Docket Entry 2 at 6). (See Docket Entry 12 at 2-11 (failing to address those, or any other, specific topics in deposition subpoena at issue).)

Instead, Softex first has asserted that the deposition subpoena at issue constitutes "the very discovery [Lenovo United States] agreed to in order to obtain the transfer [of the case brought against it by Softex from the Western District of Texas to the Eastern District of North Carolina]." (Id. at 2; see also id. at 4 ("Th[e Softex-Lenovo United States transfer] stipulation was crystal clear that both parties contemplated that Lenovo [United States] would be subject to discovery in exchange for stipulating to transfer and that [such] discovery would be used in the Absolute [l]itigation." (italics omitted)), 6-7 ("Lenovo [United States] stipulated and agreed to permit discovery to be used in the Absolute [l]itigation and now backtracks on that agreement . . . ." (internal quotation marks, italics, and stray comma omitted)).) In

8

fact, the transfer stipulation made by Lenovo United States and Softex expressly states that Lenovo United States only agreed to cooperate with discovery for use in the Absolute litigation "'to the extent such discovery is relevant and <u>permissible under the Federal Rules of Civil Procedure</u> and with Lenovo [United States] <u>reserving all rights with respect to any stay that may be granted</u> in the future.'" (<u>Id.</u> at 4 (emphasis added) (quoting Stipulation of Transfer, <u>Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd.</u>, No. 5:23CV90, Docket Entry 24, at 2 (E.D.N.C. Feb. 17, 2023).) As Lenovo United States's reply properly puts it, "[a]t no point did Lenovo [United States] stipulate to permit discovery of Lenovo [United States] <u>indiscriminately</u> for use in the Absolute [l]itigation even if [Lenovo United States] obtained a stay." (Docket Entry 14 at 2 (emphasis added) (internal quotation marks omitted); <u>see also</u> <u>id.</u> ("Such a stipulation would have defeated the whole point of a stay.").)[6]

---

6 In other words, the instant Motion (consistent with the transfer stipulation) merely endeavors to limit Softex to discovery "permissible under the Federal Rules of Civil Procedure," Stipulation of Transfer, <u>Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd.</u>, No. 5:23CV90, Docket Entry 24, at 2 (E.D.N.C. Feb. 17, 2023), and in line with Lenovo United States's "reserv[ation of] all rights with respect to [the] stay that [was] granted in the [Eastern District of North Carolina]," <u>id.</u> Lenovo United States's filing of the instant Motion thus does <u>not</u> (as Softex contends) amount to "a blatant about-face" (Docket Entry 12 at 2) or "backtrack[] on th[e transfer stipulation]" (<u>id.</u> at 7). Softex also has posited that "Lenovo [United States] took the position in responding to Softex's arguments [against a stay in their litigation in the Eastern District of North Carolina] that [Lenovo
(continued...)

9

Next, Softex has argued that "HP and Dell, represented by the same [] counsel that now represent Lenovo [United States], have already stipulated to the same exact scope of discovery that is now sought from Lenovo [United States], thus demonstrating the reasonableness of the requested discovery." (Docket Entry 12 at 2; see also id. at 3 ("[T]he HP and Dell stipulations of stay included agreement on 14 topics for 30(b)(6) depositions of HP and Dell. Softex's present [deposition] subpoena to Lenovo [United States] included the exact same 14 topics that were negotiated by the same counsel representing Lenovo [United States], and both HP and Dell agreed without objection to providing corporate testimony on the topics." (italics omitted)), 4 ("HP and Dell and their [counsel, who also represents Lenovo United States], negotiated the wording/scope of the deposition topics, ultimately agreed on an identical list of 14 topics, and HP and Dell are not challenging those topics as overbroad or burdensome in those Texas cases."), 6 ("[T]he

---

6(...continued)
United States] would provide reasonable discovery." (Docket Entry 12 at 4 (citing Reply, Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd., No. 5:23CV90, Docket Entry 113, at 12-13 (E.D.N.C. Aug. 25, 2023)).) The document cited by Softex on that point actually states that, "to the extent any discovery from Lenovo [United States] is necessary or proper in the Absolute [l]itigation, that is an issue for the court in [the Western District of Texas] to resolve as part of the Absolute [l]itigation." Reply, Softex LLC v. Lenovo (Shanghai) Elecs. Tech. Co. Ltd., No. 5:23CV90, Docket Entry 113, at 12-13 (E.D.N.C. Aug. 25, 2023). On its face, that statement manifestly does not forfeit Lenovo United States's right to contest the necessity and propriety of particular discovery sought from it by Softex in relation to the Absolute litigation.

10

subpoena served on Lenovo [United States] is based on the exact same 14 limited topics as HP and Dell agreed to provide.").)  As Lenovo United States correctly commented in reply, "[t]he fact that HP and Dell agreed to Softex's [deposition topics] in exchange for a stay has no bearing on whether Lenovo [United States], a different entity that is already subject to a stay, is required to give Softex [a deposition on the same topics]."  (Docket Entry 14 at 2; see also id. at 4 ("[Lenovo United States, HP, and Dell are each] a separate entity, with different information, different interests, and different procedural postures [in their respective cases].").)  Simply stated, "[t]he negotiations in the HP and Dell litigations [] have no bearing on the appropriate scope of third-party discovery to Lenovo [United States]."  (Id. at 3.)

Softex additionally has opposed the instant Motion based on the contention that, when "[t]he parties met and conferred on April 29, 2024, [] Softex narrowed the scope of discovery still further, as documented in Softex's May 14, 2024 email to Lenovo [United States], essentially narrowing the 14 topics to three specific areas of inquiry."  (Docket Entry 12 at 7 (citing Docket Entry 12-1 at 2); see also id. at 8 (maintaining that, "in *Jordan*, there was no attempt by [the requesting party] to narrow or tailor the subpoena to what the requesting party needed," whereas "Softex attempted to narrow and tailor the subpoena request even further in the April 29, 2024 meet and confer, to just three overarching

11

topics" (citing Docket Entry 12-1 at 2)).)  The record, however, does not support Softex's contention on that front.  (See Docket Entry 12-1 at 2 (including, in e-mail from Softex's counsel to Lenovo United States's counsel dated May 14, 2024, "following up on the meet and confer call of 4/29/2024," reference to "three general areas of inquiry for document search and production," without any suggestion (much less commitment) that Softex would condense its 14 deposition topics (emphasis added)).)  And, in any event, an eleventh-hour, revision proposal cannot save the facially overbroad, deposition subpoena at issue.  See Jordan, 921 F.3d at 190 (observing that, when it comes to "tailoring a subpoena to what the requesting party needs[,] the requesting party should have done that before serving [the subpoena]").

As a final matter, Softex has insisted that "Lenovo [United States] possesses unique documents and personal knowledge placing those documents in context, not to mention relevant personal knowledge of Lenovo[ United States's] operations for which there is no documentation."  (Docket Entry 12 at 9 (emphasis added).)  The portions of that and other statements in Softex's response which focus on documents possessed by Lenovo United States (see, e.g., id. ("Lenovo [United States] possesses documents . . . which are pertinent to Softex's indirect infringement allegations.")), counsel against allowing the broad-based deposition of Lenovo United States demanded by Softex, at least at this juncture, for

12

reasons well-articulated in Lenovo United States's reply (see Docket Entry 14 at 5 ("Softex does not explain why it cannot obtain information [needed for the Absolute litigation] . . . through documents . . . without putting Lenovo [United States] to the burden of preparing a 30(b)(6) witness with all information covered by Softex's [14] deposition topics."); see also Docket Entry 2 at 8 ("Conducting a deposition of Lenovo United States that would repeat the information provided in documents that have been or will be produced would be unduly burdensome . . . ." (citing Jordan, 921 F.3d at 193-94)). That conclusion does not mean "that third parties can decide that document production alone satisfies [a deposition] subpoena" (Docket Entry 12 at 7); rather, the Court concludes that, in this instance, the deposition subpoena at issue imposes an undue burden because "Softex has yet to articulate why it cannot obtain the [information] it [needs] from . . . Lenovo [United States's] document production" (Docket Entry 14 at 5).[7]

---

[7] Softex failed to develop its cryptic comment that "certain documents require authentication and a foundation can only be laid by Lenovo [United States] personnel" (Docket Entry 12 at 11). (See id.) Regardless, (A) none of the 14 topics in the deposition subpoena at issue mention document authentication (see Docket Entry 3-1 at 10-13), (B) many means exist to authenticate documents, see Fed. R. Evid. 901 & 902; see also United States v. Vidacak, 553 F.3d 344, 349-50 (4th Cir. 2009) ("The burden to authenticate under [Federal] Rule [of Evidence] 901 is not high . . . . [A] proponent need not establish a perfect chain of custody [f]or documentary evidence to support their admissibility."), and (C) "requests for authentication of documents . . . by 30(b)(6) witness [generally are] unduly burdensome," Allen v. Mnuchin, Civ. No. 18-1214, 2020 WL 13968919, at *1 (D.D.C. May 27, 2020) (unpublished).

13

Similarly, Softex's emphasis on its need for a deposition of Lenovo United States to obtain the deponent's "<u>personal knowledge</u> placing [unspecified] documents in context, not to mention relevant <u>personal knowledge</u> of Lenovo[ United States's] operations for which there is no documentation" (Docket Entry 12 at 9 (emphasis added); <u>see also</u> <u>id.</u> at 9-10 (arguing that Softex needs testimony giving "personal impression of [certain] sales meetings" and "recall[ing] a customer's first-hand impressions, pushback, or body language regarding the importance of certain product features discussed in the meeting")) does <u>not</u> warrant subjecting Lenovo United States to a deposition under Federal Rule of Civil Procedure 30(b)(6), <u>see, e.g.</u>, <u>Jordan</u>, 921 F.3d at 193 (explaining that "Rule 30(b)(6) deponents" generally do <u>not</u> testify based on "personal knowledge"). Lastly, although Softex's response baldly declares that (A) "Softex is entitled to depose a witness from Lenovo [United States] that can provide Lenovo [United States's] view and context to the negotiating strategy [employed when Lenovo United States reached agreements with Absolute] and the importance [Lenovo United States] places on certain features" (Docket Entry 12 at 9-10), (B) "a Lenovo [United States] deponent would provide critical non-documentary evidence, including the objectives, motivations, rationale, and context for the documents produced by Lenovo [United States], not to mention explaining increases or decreases in financial performance, trends in the product bundles being offered,

14

[and] whether it is seeking alternative technologies" (id. at 10), and (C) "[t]he information . . . sought by [Softex] is directly relevant and narrowly tailored to the liability and damages issues in the Absolute [l]itigation" (id. (italics omitted)), Lenovo United States's reply rightfully rejoins that "Softex simply claims that the information it seeks from a [Lenovo United States] deponent is relevant to the Absolute [l]itigation" (Docket Entry 14 at 5) and "Softex's mere insistence that [deposition testimony from Lenovo United States about] the context and substance of the documents produced will be relevant in the Absolute [l]itigation does not make it so" (id.).

In sum, "Softex has failed to explain why it needs this [deposition testimony] from Lenovo [United States] for the Absolute [l]itigation. . . . Softex [has] fail[ed] altogether . . . to connect the [deposition] discovery it seeks here to its claims against Absolute." (Id. at 5-6.)[8]

---

8 That failure looms particularly large because it adds to the "appear[ance] that Softex is using the[ deposition subpoena at issue] as an end-run around the stay order [in the Eastern District of North Carolina]" (Docket Entry 14 at 6). Precluding (for now) the broad-based deposition of Lenovo United States sought by Softex respects the decision of the court responsible for the principal litigation between those two entities to stay that case and leaves for another day, "[o]nce the Absolute litigation is complete, and the stay of [Softex's] case against Lenovo [United States] is lifted, [a decision about whether] that [deposition] discovery will be relevant and warranted at that time" (Docket Entry 14 at 6).

CONCLUSION

The deposition testimony sought from Lenovo United States by Softex would "subject[ the deponent] to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv).

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 1) is **GRANTED** and the deposition subpoena at issue (Docket Entry 3-1 at 2-13) is **QUASHED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 12, 2024